**STATE of Missouri, Respondent,**

v.

**Byron Paul MICHAEL, Appellant.**

**No. ED 88104.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 7, 2007.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 12, 2007.

Application for Transfer Denied
Oct. 30, 2007.

Matthew M. Ward, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Attorney General, Jefferson City, MO, for respondent.

ROBERT G. DOWD, JR., Judge.

Byron Michael (Defendant) appeals from the judgment upon his conviction by a jury of (Count I) manufacturing a controlled substance, Section 195.211, RSMo 2000 [1]; (Count II) possession of a controlled substance with intent to deliver, Section 195.211; (Count III) possession of drug paraphernalia with intent to manufacture a controlled substance, Section 195.233; (Count IV) possession of ephedrine with intent to manufacture methamphetamine, Section 195.246; (Count V) misdemeanor possession of marijuana, Section 195.202, and; (Count VI) misdemeanor possession of drug paraphernalia, Section 195.233, for which Defendant was sentenced to a total of nineteen years' imprisonment. On appeal, Defendant argues the trial court: (1) abused its discretion in overruling his motion to exclude and his objection to the admission of evidence regarding items destroyed by the police; (2) erred in sentencing Defendant on both manufacturing a controlled substance (Count I) and possession of drug paraphernalia with the intent to manufacture a controlled substance (Count III) because this violated double jeopardy; (3) erred in overruling Defendant's motion for judgment of acquittal at the close of all evidence because there was insufficient evidence to find Defendant guilty of possession of a controlled substance with intent to deliver (Count II); (4) erred in overruling Defendant's motion for judgment of acquittal at the close of all evidence because there was insufficient evidence to find Defendant guilty of manufacturing a controlled substance (Count I); (5) plainly erred in giving instruction No. 5; (6) plainly erred in giving instruction No. 7; and (7) plainly erred in giving instruction No. 8. We affirm.

Viewed in the light most favorable to the verdict, the following evidence was adduced at trial:

Just after midnight on November 27, 2004, Moberly police officer, Tracy Whearty, stopped Defendant for driving without headlights. As Officer Whearty approached Defendant's car, she could smell a "strong" ether and anhydrous ammonia odor. After Defendant rolled down his window, Officer Whearty realized the smell was coming from inside Defendant's car. Officer Whearty associated these odors with the manufacture of methamphetamine.

Defendant and his passenger, John Hunt, gave Officer Whearty their identifications, who then returned to her patrol car to run computer checks on them and the vehicle. Officer Whearty discovered that the plates on the car Defendant was driving were registered to another car. After Officer Whearty returned to Defendant's vehicle, she smelled the odor of recently sprayed air freshener she had not smelled before. Officer Whearty testified Defendant appeared nervous. A can of air freshener was later found inside the vehicle on the driver's side floorboard.

1.  Unless otherwise indicated, all further statutory references are to RSMo 2000.

By this time, Moberly police officers James Link and John Kirkpatrick arrived at the scene. Officer Link testified he noticed a "heavy chemical smell" of odors associated with a methamphetamine lab. Officer Link saw Defendant holding a cigarette and lighter and asked Defendant to get out of the car to avoid any combustion of the chemicals he smelled in the car. As Defendant left the car, Officer Whearty testified she saw a plastic jug filled with a mixture of liquid and a powdery white substance sitting on the driver's side floorboard between Defendant's legs. A sample of this mixture placed in a vial for testing weighed 13.27 grams and tested positive for methamphetamine. This is commonly known as "meth oil." The amount of "meth oil" found in the entire container was substantially more than what was retrieved in the sample vial, and it constituted an amount greater than what would be needed for personal use.

After Defendant exited the car, he dropped a bag of marijuana on the ground. A search of Defendant revealed he was carrying rolling papers that could be used to make marijuana cigarettes.

A search of the car found numerous items used in the manufacture of methamphetamine, including glass jars, coffee filters, camping fuel, plastic tubing, wooden spoons,[2] two 26–ounce containers of salt, a box of disposable gloves, a funnel, a fuel filter, a filter for a breathing mask, and a bottle of Heet. Also, a large plastic tarp that had ether on it was found in the car. A can of starting fluid was underneath the driver's seat, and a can of "liquid fire" found in the car was opened.

A container of anhydrous ammonia was located on the backseat of the car and inside a blue cooler. A plastic soda bottle, converted to a "hydrogen generator," which produces a reaction with salt and sulfuric acid, was also found in the cooler. Also known as an "active generator," this device is used in the methamphetamine-making process to release methamphetamine powder from "meth oil." In another container inside the cooler, there were pills soaking in methanol.

Unopened boxes of cold pills containing pseudoephedrine, a key ingredient for methamphetamine production, were also found in the car. A grinder or chopper found in the car, which could be used to grind the pills, had pseudoephedrine residue on it. A "miner's lamp," which could be worn on the head to keep one's hands free, was found in the car as well. Also, Defendant admitted that at least one item, a quilt, found in the back of the car belonged to him.

During trial, Defendant and the State stipulated that "all of the items recovered" from Defendant's car on the night of the stop are commonly used in manufacturing methamphetamine. The parties also stipulated that the items recovered "essentially constituted a complete meth lab, minus lithium batteries."

Defendant testified he borrowed the car from friends because his truck had broken down. Officer Link testified Defendant asked whether the car's owner would lose her car because he had borrowed it to "move some stuff around." When Officer Link asked Defendant what "stuff" he was referring to, he replied, "You know." The officer inferred that Defendant was referring to the items producing the smell coming from inside the vehicle.

---

**2.** Sergeant Arthur Giesendorfer, who has extensive experience with and training in the manufacture of methamphetamine, testified that either wooden or plastic spoons are typically used during the manufacture of methamphetamine because metal spoons inhibit the chemical reactions needed to produce the drug.

Although Defendant noticed the car "smelled bad," was "cluttered," and a "box" was below his feet as he drove, Defendant testified he paid no attention to these things. He acknowledged spraying air freshener in the car, but denied doing it after police had stopped him. He also stated that a quilt belonging to him was found in the car's backseat.

At trial, Defendant admitted the bag of marijuana that fell on the ground and the rolling papers belonged to him. He claimed he did not know anything about the items used to manufacture methamphetamine found in the car. There was testimony at trial the car's owner denied any knowledge of these items and Defendant, who had borrowed the car, was the only person permitted to drive it.

Before the case was submitted to the jury, Defendant agreed that a "directed verdict" of guilty could be entered against him on the misdemeanor charges of marijuana possession (Count V) and possession of drug paraphernalia (Count VI). The jury found Defendant guilty of the remaining four counts. Defendant was sentenced to concurrent sentences of fifteen years' imprisonment each on Counts I and II, concurrent sentences of four years' imprisonment each on Counts III and IV but consecutive to Counts I and II, and concurrent sentences of one year' imprisonment each on Counts V and VI. The trial court sentenced Defendant to a total of nineteen years' imprisonment. This appeal follows.

■ In his first point, Defendant argues the trial court abused its discretion in overruling his motion to exclude and his objection to the admission of evidence regarding items destroyed by the police. Defendant contends that destroying all the hazardous materials seized during the search without "the approval of the affect-

ed court" was a violation of Section 490.733. We find no abuse of discretion.

■ "When reviewing the admission or exclusion of evidence at trial, the reviewing court will not disturb the trial court's ruling absent a clear abuse of discretion because trial courts have broad discretion in assessing the admissibility of evidence." *State v. Edberg,* 185 S.W.3d 290, 293 (Mo.App. S.D.2006). "A trial court abuses its discretion if the ruling is: (1) clearly against the logic of the circumstances presented to the court, and (2) is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." Id. "When reasonable minds can disagree as to the action taken by the trial court, then the trial court has not abused its discretion." Id.

Before trial, Defendant filed a motion to exclude evidence he alleged was improperly disposed of in violation of Section 490.733, which requires the State to get approval by the trial court before destroying evidence seized. Defendant alleged that because police failed to retain samples of the hazardous materials found in Defendant's car and because they did not obtain a court order before disposing of these materials, any evidence relating to the existence of these materials should be excluded from Defendant's trial. The motion was denied. Defendant also objected when the testimony of what the officers found in the car was admitted at trial. Defendant's objection was overruled.

During trial, Officer Whearty testified that most items recovered from Defendant's car that were used to manufacture methamphetamine were destroyed because of their hazardous nature. She stated that the police department had no facilities to store items contaminated with ether or anhydrous ammonia. She stated that a person could pass out or even die from breathing anhydrous ammonia fumes.

Sergeant Giesendorfer, who had considerable experience in investigating methamphetamine labs, also testified that the police had no way to store these hazardous materials and that they must be disposed of at a hazardous materials site. He further testified that this is true of any equipment that has been used in the manufacturing process because there is no way to clean it and render it safe for storage. Sergeant Giesendorfer stated this is why police document and photograph each item recovered in a methamphetamine-manufacturing case since the items must be disposed of. He also stated that no field testing was done on any of the hazardous materials found with the exception of a litmus test he performed on the hydrogen generator to show that it contained acid.

The record shows that the only sample taken by police was from the plastic container of "meth oil" found between Defendant's legs. That sample contained methamphetamine and weighed 13.27 grams.

Defendant argues that if hazardous materials are disposed of by police in criminal cases without following Section 490.733, defendants would be unable to test the substances themselves. However, in this case Defendant does not dispute that there were hazardous materials associated with the production of methamphetamine found inside his vehicle. Defendant testified that the car "smelled bad" like "starting fluid." Defendant also stipulated before the jury that the items recovered from the car were commonly used in the manufacture of methamphetamine and that their presence essentially constituted a nearly complete methamphetamine lab.

Moreover, nothing in Section 490.733 suggests the trial court was required to exclude any evidence of the hazardous materials found in Defendant's car because police did not follow Section 490.733. Section 490.733.2 provides in pertinent part:

> Notwithstanding the provisions of section 575.100, RSMo, and with the approval of the affected court, any law enforcement officer who seizes hazardous materials as evidence related to a criminal investigation may collect representative samples of such hazardous materials, and destroy or dispose of, or direct another person to destroy or dispose of the remaining quantity of such hazardous materials.

The statute also instructs courts that representative samples, when accompanied by other documentation verifying their identity, constitute competent evidence that courts must allow in any judicial proceeding:

> In any prosecution, representative samples of hazardous materials accompanied by photographs, videotapes, laboratory analysis reports or other means used to verify and document the identity and quantity of the material shall be deemed competent evidence of such hazardous materials and shall be admissible in any proceeding, hearing or trial as if such materials had been introduced as evidence.

Section 490.733.3.

Contrary to Defendant's argument, nothing in the statute mandates the exclusion of any evidence of the existence of hazardous materials not collected in the manner permitted under Section 490.733. In *State v. Smith*, 157 S.W.3d 687, 691 (Mo.App. W.D.2004), the court noted that the language of Section 490.733 does not "require ... the dismissal of the charges against a defendant," if its provisions are not followed. In fact, the court noted that this section does not "specify any certain remedy" for any alleged violation. *Id.*

Defendant's reliance on two cases involving Section 490.733 is misplaced. First, Defendant claims that in *State v. Puckett*,

146 S.W.3d 19 (Mo.App. E.D.2004), the court ruled "that excluding evidence of items destroyed in violation of [Section 490.733] was an appropriate sanction." The only holding the court made in *Puckett* was that an appellate court had no jurisdiction to hear an interlocutory appeal by the State challenging a trial court's pretrial ruling that excluded certain evidence. *Id.* at 24. Second, Defendant claims that in *Smith,* the court "felt compelled to interject that this evidence perhaps should have been excluded." In fact, the court expressly held that it was not deciding the issue of whether the trial court should have imposed the sanction of excluding evidence in that case. *Smith,* 157 S.W.3d at 691. Instead, as noted above, the court stated that Section 490.733 does not mandate any specific remedy for an alleged violation of its provisions. *Id.* Although the offices did destroy the hazardous materials without the approval of the court, under the circumstances of the instant case, the trial court did not abuse its discretion in refusing to exclude evidence of the hazardous materials found in Defendant's car. Point one is denied.

■ In his second point, Defendant argues the trial court erred in sentencing him on both manufacturing a controlled substance (Count I) and possession of drug paraphernalia with the intent to manufacture a controlled substance (Count III) because this violated double jeopardy. Defendant contends that, as charged, Count III is a lesser included offense of Count I and therefore Defendant was punished under more than one statute. We disagree.

■ A claim of an alleged violation of double jeopardy involves a question of law; therefore, our review is de novo. *State v. Schumacher,* 85 S.W.3d 759, 762 (Mo.App. W.D.2002).

At the conclusion of the State's case, Defendant moved to dismiss either Count I or Count III on double jeopardy grounds, which the trial court overruled. Defendant raised this issue again in his motion for new trial.

In Count I, Defendant was charged with manufacturing methamphetamine under Section 195.211, which provides:

> Except as authorized by sections 195.005 to 195.425 and except as provided in section 195.222, it is unlawful for any person to distribute, deliver, manufacture, produce or attempt to distribute, deliver, manufacture or produce a controlled substance or to possess with intent to distribute, deliver, manufacture, or produce a controlled substance.

In Count III, Defendant was charged with possession of drug paraphernalia with intent to manufacture a controlled substance under Section 195.233, which provides:

> It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance or an imitation controlled substance in violation of sections 195.005 to 195.425.

Defendant's double jeopardy argument has been specifically addressed and rejected by case law. In *Salmons v. State,* 16 S.W.3d 635, 637 (Mo.App. W.D.2000), the defendant contended that a double jeopardy violation occurred when he was convicted both of manufacture of methamphetamine and possession of pseudoephedrine with the intent to manufacture methamphetamine. The court held that each offense required proof of an element that was not required in the other, and thus

convictions for both did not violate double jeopardy. *Salmons,* 16 S.W.3d at 637–38. The court held that convictions for both attempting to manufacture methamphetamine and the possession of pseudoephedrine with the intent to manufacture methamphetamine did not violate the double jeopardy clause. *Id.*

Other Missouri cases have also held that convictions for multiple offenses involving situations similar to the one here do not violate double jeopardy. *Harp v. State,* 209 S.W.3d 560, 563–64 (Mo.App. S.D.2007)(manufacturing methamphetamine, possession of methamphetamine, possession of a chemical with intent to create methamphetamine, and possession of drug paraphernalia with intent to create methamphetamine); *State v. White,* 14 S.W.3d 121 (Mo.App. W.D.2000)(attempt to manufacture methamphetamine and possession of pseudoephedrine with intent to manufacture methamphetamine). We find Defendant's double-jeopardy argument is without merit. Point two is denied.

In his third and fourth points, Defendant argues the trial court erred in overruling his motion for judgment of acquittal at the close of all evidence because there was insufficient evidence to find Defendant guilty of (a) manufacturing a controlled substance (Count I) and (b) possession of a controlled substance with intent to deliver (Count II). We disagree.[3]

In reviewing a challenge to the sufficiency of the evidence, we must determine whether there is sufficient evidence from which a reasonable juror could have found Defendant guilty beyond a reasonable doubt. *State v. Kellner,* 103 S.W.3d 363, 365 (Mo.App. S.D.2003). We view the evidence in the light most favorable to the verdict and give the State the benefit of all reasonable inferences therefrom. Id. We

disregard all evidence and inferences to the contrary. *Id.* We do not weigh the evidence, nor do we judge the credibility of the witnesses, for that is within the jury's province. *Id.* The jury, as trier of fact, is free to believe or disbelieve all, part, or none of a witness's testimony. *Id.*

■ The record contains sufficient evidence to support Defendant's conviction for manufacturing methamphetamine (Count I). Defendant argues the evidence showed he only possessed the drug paraphernalia found in his car, but did not show these items were being employed to manufacture methamphetamine.

In the container found between Defendant's feet, police found a mixture of liquid and a powdery white substance commonly known as "meth oil." The blue cooler in Defendant's backseat contained a plastic soda bottle, which had been converted to a "hydrogen generator," which produces a reaction with salt and sulfuric acid. Also known as an "active generator," this device was being used in the methamphetamine-making process to release methamphetamine powder from the solvent mixture or "meth oil." The evidence showed that Defendant had two hydrogen generators in his vehicle. Sergeant Giesendorfer testified these generators were in the process of manufacturing methamphetamine when found in the car.

In addition, unopened boxes of cold pills containing pseudoephedrine, a key ingredient for methamphetamine production, were also found in the car. A grinder or chopper found in the car, which can be used to grind these pills, had pseudoephedrine residue on it. In another container inside the cooler, police found pills soaking in methanol. A "miner's lamp," which

---

**3.** Because points three and four both relate to the sufficiency of the evidence to support the respective convictions, we address them in the same section.

could be worn on the head to keep one's hands free, was found in the car as well. The evidence shows when Defendant was stopped by police, methamphetamine was actively being manufactured in his car. There was sufficient evidence from which a reasonable juror could infer the paraphernalia Defendant possessed was being used to manufacture methamphetamine.

■ The record also contains sufficient evidence to support Defendant's conviction for possession of methamphetamine with the intent to deliver (Count II). During trial, evidence was presented that police obtained a sample of the "meth oil" that was in the plastic container sitting on the floorboard between Defendant's legs. The sample, which was put into a small vial, contained a liquid mixed with powder weighing 13.27 grams. The sample was tested and found to contain methamphetamine.

Sergeant Giesendorfer, who took the sample, testified there was "substantially more" "meth oil" in the container than was retrieved in the sample vial and the amount in the vial weighed more than 13 grams. Sergeant Giesendorfer also stated the amount in the container was more than would be used for personal use if reduced to the finished product. He estimated the street value of the amount in the vial alone, if it were the finished product, was $1300. Finally, Sergeant Giesendorfer testified the "meth oil" found in the container could not be ingested, and would be poisonous until it became a finished product.

■ Defendant was charged in Count II with possession of a controlled substance with intent to deliver in violation of Section 195.211. "To sustain a conviction of possession of a controlled substance with intent to distribute under Section 195.211, the State must have proven (1) conscious and intentional possession of the controlled substance, either actual or constructive; (2) awareness of the presence and nature of the substance; and (3) intent to distribute it." *State v. Bremenkamp*, 190 S.W.3d 487, 493 (Mo.App. S.D.2006). If the State proves possession, the jury is free to infer the intent to distribute from the quantity of drugs found in a form unsuitable for immediate use. *State v. Belton*, 108 S.W.3d 171, 176 (Mo.App. W.D. 2003).

Here, the evidence showed the amount in the sample vial collected by police, which was only a small portion of the contents in the container between Defendant's feet, constituted more methamphetamine than would be required for personal use. In addition, the evidence showed was "substantially more" "meth oil" in the container itself. Finally, this substance was suspended in a solution that was unfit for immediate consumption. This constituted sufficient evidence from which a reasonable juror could infer Defendant possessed the drug with the intent to distribute it. Points three and four are denied.

In his fifth, sixth, and seventh points Defendant argues the trial court plainly erred in giving Instructions No. 5, No. 7, and No. 8. Specifically, Defendant alleges that Instruction No. 5 did not require the jury to find each element of the offense of manufacturing methamphetamine, and Instructions No. 7 and No. 8 failed to define the term "possessed" and "drug paraphernalia."[4] We disagree.

---

4. We address points V, VI, and VII together because they all involve claims of instructional error and plain error review. Defendant concedes the term "drug paraphernalia" was

an element "stipulated to by the parties, so the element was not in serious dispute, and thus probably does not rise to manifest injustice by itself." Yet, Defendant contends that

■ Defendant failed to object to Instructions No. 5, 7, and 8; therefore, any alleged errors relating to these instructions have not been preserved. Accordingly, Defendant asks for relief under Rule 30.20, which provides, in pertinent part that, "... plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

■ The State argues Defendant has waived his right to appellate review by failing to object at trial to Instructions No. 5, No. 7, and No. 8. The State contends this court is not required to give plain error review to these claim, especially since Defendant failed to comply with Rule 28.03, which provides:

> Counsel shall make specific objections to the instructions or verdict forms considered erroneous. No party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Counsel need not repeat objections already made on the record prior to delivery of the instructions and verdict forms. The objections must also be raised in the motion for new trial in accordance with Rule 29.11.

Although the State is correct that Defendant waived appellate review when trial counsel failed to raise a specific objection to the disputed instructions, it misconstrues the extent of the waiver. *See State v. Wurtzberger,* 40 S.W.3d 893, 898 (Mo. banc 2001). Unpreserved claims of plain error may still be reviewed under Rule 30.20 if manifest injustice would otherwise

occur. Id. In other words, for instructional error to be plain error, the defendant must show the trial court has so misdirected or failed to instruct the jury that it is apparent the instructional error affected the jury's verdict. *State v. Mickle,* 164 S.W.3d 33, 61 (Mo.App. W.D.2005).

Instruction No. 5, the verdict director for Count I provided:

> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

> First, that on or about November 27, 2004, in the County of Randolph, State of Missouri,

> Second, the defendant Byron P. Michael acting alone or in concert with another or others,

> Third, knowingly manufactured methamphetamine by the possession of paraphernalia commonly utilized in the manufacturing of methamphetamine, then you will find the defendant guilty under Count I of manufacturing a controlled substance.

> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Instruction No. 5 was patterned after MAI 304.02, which is the generic form used only when a specific verdict-directing instruction for that particular offense does not exist. MAI 304.02, Notes on Use 2. When addressing alleged instructional error, we begin with the proposition that if there is an MAI instruction made applicable by the law or the Notes on Use, the trial court is required to instruct the jury in accordance with that instruction. Rule

---

taken together with the omission of the contested element of "possession," the jury was left without "proper guidance and thus the

verdict is in question." We are unpersuaded by Defendant's argument.

28.02(c). The failure to give an instruction in accordance with an MAI or any applicable Notes on Use is error, the prejudicial effect to be judicially determined. *Mickle*, 164 S.W.3d at 61. The State concedes that because a specific MAI instruction exists for the offense of manufacturing a controlled substance exists, MAI 325.06.1, the trial court erred in submitting Instruction No. 5 to the jury. Rule 28.02(c). However, the State contends Defendant did not suffer manifest injustice and we agree.

■ Defendant claims two errors with respect to Instruction No. 5. First, Defendant complains the instruction failed to contain a description of the alleged method of manufacturing. Second, Defendant complains the instruction did not ask the jury to find Defendant knew or was aware the substance being manufactured was methamphetamine.

With respect to Defendant's first claim, the method of manufacture is not an essential element of the crime of manufacturing a controlled substance under Section 195.211. *Daniels v. State*, 70 S.W.3d 457, 464 (Mo.App. W.D.2002). The State need only show the defendant manufactured methamphetamine and he knew or was aware the substance was methamphetamine. *Id.*

■ With respect to Defendant's second claim, the pattern verdict director for manufacturing controlled substances requires the jury to find the defendant knew the substance he manufactured was methamphetamine. MAI 325.06.1. Although the pattern instruction requires separate findings of knowingly manufactured and awareness the substance manufactured was methamphetamine, this omission is not fatal.

■ The failure of a verdict-directing instruction to contain an essential element of the offense does not rise to the level of plain error if the record establishes the existence of the missing element "beyond serious dispute." *Smith*, 157 S.W.3d at 695. The evidence here showed the issue of whether methamphetamine was being manufactured was not seriously disputed. Defendant stipulated that a nearly-complete methamphetamine lab was found in his car. An officer familiar with methamphetamine production testified methamphetamine was being actively processed in Defendant's car. Defendant's defense was not that methamphetamine was not being manufactured in the car, but was that he was unaware of any such activity. The car emitted a very strong odor of chemicals associated with methamphetamine manufacture which Defendant attempted to mask by spraying air freshener. Defendant had a container of "meth oil" between his feet while he was driving the car. Defendant asked whether the car's owner would lose possession of her car because Defendant had borrowed it to move "some stuff" around. When the officer asked Defendant "what stuff," Defendant replied, "You know." Finally, Defendant's property, a quilt, was found in the backseat near materials being employed to manufacture methamphetamine. All of this constitutes overwhelming evidence Defendant knowingly manufactured and was aware the substance being manufactured was methamphetamine. The verdict-director's failure to conform to the pattern instruction in Instruction No. 5 did not affect the jury's verdict.

In his sixth and seventh points, Defendant also argues the trial court plainly erred in failing to include a definition of the word "possessed" in Instruction No. 7 and Instruction No. 8. Instruction No. 7, the verdict director for Count III provided:

    As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about November 27, 2004, in the County of Randolph, State of Missouri,

Second, the defendant Byron P. Michael acting alone or in concert with another or others,

Third possessed glass jars, coffee filters, salt pressurized pump, funnel; fuel filter and or a gallon jug, which was or were drug paraphernalia,

Fourth, with intent to manufacture or produce the substances,

Fifth, knowing that the substances or items was or were drug paraphernalia and would be used as drug paraphernalia to manufacture methamphetamine, then you will find the defendant guilty under Count III of possession of drug paraphernalia with the intent to manufacture controlled substances.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Instruction No. 8, the verdict director for Count IV provided:

As to Count IV, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about November 27, 2004, in the County of Randolph, State of Missouri,

Second, the defendant Byron P. Michael acting alone or in concert with another or others,

Third, with the intent to manufacture methamphetamine,

Fourth, knowingly possessed ephedrine, then you will find the defendant guilty under Count IV of possession of ephedrine with the intent to manufacture methamphetamine or its analogs.

However, unless you find and believe from the evidence beyond a reasonable

doubt each and all of these propositions, you must find the defendant not guilty of that offense.

■■■ Instructions No. 7 and 8 were patterned after MAI 304.02, which is the generic form used only when a specific verdict-directing instruction for that particular offense does not exist and does not include the MAI definition of "possessed." MAI 304.02, Notes on Use 2. The State concedes that because specific MAI instructions exist for the offenses of possession of drug paraphernalia with the intent to manufacture controlled substances, MAI 325.22, and possession of ephedrine with intent to manufacture methamphetamine, MAI 325.32, the trial court erred in submitting Instructions No. 7 and 8 to the jury. Rule 28.02(c). However, the State contends Defendant did not suffer manifest injustice and we agree.

Both MAI 325.22 and 325.32 contain the word "possessed," which provides:

As used in this instruction, the term "possessed" means either actual or constructive possession of the paraphernalia. A person has actual possession if he has the paraphernalia on his person or within easy reach or convenient control. A person who is not in actual possession has constructive possession if he has the power and intention at a given time to exercise dominion or control over the paraphernalia either directly or through another person or persons. (Possession may also be sole or joint. If one person alone has possession of the paraphernalia, possession is sole. If two or more persons share possession of the paraphernalia, possession is joint.)

Defendant complains the jury was misdirected because the "common-sense meaning of 'possessed' is to have something on your person," while constructive possession, which means to have "dominion or

control" over something, falls outside the ordinary meaning of the word. Here, there was no misdirection of the jury resulting in prejudice because the jury found Defendant guilty under the stricter definition of "actual possession." The record overwhelmingly showed Defendant was in actual possession of the drug paraphernalia and ephedrine found in his car.

A container of "meth oil" was found between Defendant's legs. Defendant admitted his quilt was in the backseat, which is where most of the paraphernalia were found. Drug paraphernalia were present in the passenger compartment of the vehicle and these paraphernalia were being actively employed to manufacture methamphetamine when Defendant was stopped. Finally, Defendant made no claim the materials belonged to his passenger. From the evidence, a reasonable juror could have inferred Defendant was in actual possession of the drug paraphernalia. There was no plain error in failing to define "possession" when the evidence established "beyond serious dispute" Defendant's possession of materials used to make methamphetamine. *Smith*, 157 S.W.3d at 696. The trial court did not plainly err in failing to include the definition of "possessed" in Instructions No. 7 and 8. Points five, six, and seven are denied.

Judgment affirmed.

GEORGE W. DRAPER III, P.J. and PATRICIA L. COHEN, J., concur.