## STATE OF MISSOURI, Respondent, v. TEASDALE, Appellant.

**St. Louis Court of Appeals, November 27, 1906.**

1. **CRIMES AND PUNISHMENTS: Commission Merchant: Failure to Account.** Where the president and general manager of a commission company, a corporation, received for his company some goods consigned to it, sold the same and the proceeds were deposited by the treasurer of the company to its credit with the knowledge of the president and general manager, and where he was called upon frequently for an accounting, but failed to account and the corporation went into bankruptcy, he was guilty of a violation of section 1943, Revised Statutes of 1899, although he did not personally convert the money to his own use.

2. **CRIMINAL PRACTICE: Secondary Evidence: Carbon Copies of Letters.** In a prosecution for crime in which letters are important and material evidence, it is error to receive in evidence carbon copies of such letters where there was no showing that effort was made to produce the originals.

Appeal from the St. Louis Court of Criminal Correction.—*Hon. Hiram N. Moore,* Judge.

REVERSED AND REMANDED.

*H. Chouteau Dyer* for appellant.

(1)    The amended information should have been quashed, because, (a) It does not sufficiently follow the language of the statute under which it is framed. The defendant should have been brought directly within all the material words of the statute and nothing left to intendment. State v. Miller, 132 Mo. 300. . (b)    It alleges that the property was consigned to the Miller and Teasdale Commission Company (a corporation), sold by it through the president and the proceeds of the sale converted to the defendant's own use without alleging in the language of the statute that he was the agent,

clerk and servant of the person to whom the property was consigned. State v. Baskett, 52 Mo. App. 389; State v. Ross, 25 Mo. 426; State v. Meysenberg, 171 Mo. 1; State v. Pickett, 174 Mo. 663. (c) It alleges that the defendant as president of the Miller and Teasdale Commission Company, converted the proceeds of the sale of the consigned property to his own use; obviously meaning his personal use and not that of the corporation and that without further allegations, condems the whole information. State v. Flint, 62 Mo. 393; State v. Harmon, 106 Mo. 635. (d) The information should read in the language of the statute. State v. Kesterling, 12 Mo. 565; State v. Davis, 70 Mo. 467. (2) The trial court committed error in permitting the introduction in evidence over defendant's objections, time and again of carbon copies of letters and telegrams when no effort was shown to have been made to secure the originals. State v. Barnett, 110 Mo. App. 595; State v. Mulloy, 111 Mo. App. 682; State v. Lentz, 184 Mo. 242; 2 Wigmore on Evidence, sec. 1234; Traber v. Hicks, 131 Mo. 189.

*J. D. Dalton,* Prosecuting Attorney, for respondent; *J. Hugo Grimm* of counsel.

BLAND, P. J.— To the original information filed in this cause, defendant filed at the same time a general demurrer and a motion to quash. Pending these motions, the following amended information was filed:

"State of Missouri, Plaintiff, v. Everett P. Teasdale, Defendant, charged with fraud by commission merchant.

"Nelson Thomas, assistant prosecuting attorney, of the St. Louis Court of Criminal Correction, now here in court, on behalf of the State of Missouri, amended information makes as follows:

"That Everett P. Teasdale, in the city of St. Louis, on the fourth day or March, 1905, being then and there

a commission merchant and president, agent and general manager of the Miller & Teasdale Commission Company, a corporation, storing and shipping goods, wares and merchandise, and selling on commission such goods and property, for a percentage on the sales thereof, and that the said Everett P. Teasdale as president of the said corporation, did then and there receive of and from one Albert Fogg a certain quantity of cranberries, to-wit, six hundred cases, the property of said Albert Fogg of the value of one thousand dollars; said cranberries having been consigned to said Miller & Teasdale Commission Company, a corporation, to be sold by said corporation on commission for the account of Albert Fogg; and the said Everett P. Teasdale, as president of said corporation, on or about the 4th day of March, 1905, did sell two hundred and fifty crates of said cranberries and did receive therefor, the sum of $409.10 and on said day said Everett P. Teasdale, as such president of said corporation did convert to his own use, without the consent of the said Albert Fogg, the owner thereof, the said sum of $409.10, the sum received by him as such president, for the said two hundred and fifty crates of cranberries, property of Albert Fogg, and did unlawfully fail to pay over the avails and proceeds of said sale of cranberries, so as aforesaid sold by him, on demand of said Albert Fogg, the party entitled thereto, contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State.

"NELSON THOMAS,
"Ass't Pros. Attorney of the St.
Louis Court of Criminal
Correction."

The information was properly verified.

The demurrer and motion to quash the first information were refiled to apply to the amended one. Both were overruled by the court. The statute upon which the information is based reads as follows:

"If any warehouseman, storage, forwarding or commission merchant, or any other person selling on commission or for a percentage on sales made by him, or any person receiving goods on condition that he is to pay a certain price or value to the owner or shipper when such goods are sold, or if the agent, clerk or servant of any such person shall convert to his own use any produce, cattle, hogs, cotton, flour or other property of any description whatsoever, or the proceeds or avails thereof, without the consent of the owner thereof, or shall fail to pay over the proceeds or avails thereof, less his proper charges, on the demand of the person entitled thereto, or his duly authorized agent, he shall be adjudged guilty of a misdemeanor, and shall, on conviction, be punished by a fine not exceeding one thousand dollars nor less than one hundred dollars, or confined in the county jail or work house not longer than one year nor less than sixty days, or shall be punished by both such fine and imprisonment, and shall be liable to the person injured in double the value of the property or money so converted." [Sec. 1943, R. S. 1899.]

The amended information follows the language of the statute, is sufficiently definite and specific to notify the defendant of the offense of which he stands charged, and therefore fills the requirements of the law. The issues made by the information and defendant's plea of "not guilty" thereto were submitted to the court, sitting as a jury, who, after hearing all the evidence, found defendant guilty and assessed his punishment at a fine of one thousand dollars. Defendant appealed.

No declarations of law were asked or given, therefore, the only questions presented for our consideration, is whether or not there is sufficient evidence in the record to warrant the court's verdict of guilty, and to pass on certain objections interposed at the trial, to the admission of some of the evidence. The specific charges in the amended information is that defendant, as president and agent of the Miller & Teasdale Commission Co.,

sold two hundred and fifty crates of cranberries, consigned by Mr. Fogg to the Miller & Teasdale Commission Co., for four hundred and nine dollars and ten cents, and converted the proceeds of the sale to his own use. The undisputed facts are that, in February, 1905, Albert Fogg, a commission merchant doing business in Philadelphia, Pennsylvania, shipped the Miller & Teasdale Co., doing business in the city of St. Louis, Missouri, six hundred cases (a carload) of cranberries to be sold on commission. The Miller & Teasdale Co., caused the car to be diverted and stopped at Indianapolis, Indiana, and two hundred and fifty crates of the berries were delivered to Crossland & Co., to be by them sold on commission for the Miller & Teasdale Co. After the two hundred and fifty crates were taken out at Indianapolis, the car was forwarded to St. Louis, where it arrived on March 5, 1905, and the remaining berries were taken by the Miller & Teasdale Co., and stored in their warehouses, and were sold, excepting a few crates, prior to August, 1905. During the months of March and April, 1905, Crossland & Co., sold the two hundred and fifty crates consigned to them, and from the proceeds of the sale made the following remittances to Miller & Teasdale Co., March 7th, $260; March 22d, $122.60; April 21st, $10.05. The remittances were received by the Miller & Teasdale Co., and deposited in bank to its credit. In August following the Miller & Teasdale Co., being insolvent. executed a deed of assignment of all its assets for the benefit of its creditors. In the following month the corporation was forced into bankruptcy on the petition of some of its creditors. No report of the sale of the two hundred and fifty crates of berries by Crossland & Co., was ever made to Fogg, nor did he ever receive one cent on account of the sale, and no accounting of the sale of any of the berries, or payment for them was ever made to Fogg by the Miller Teasdale Co. On June sixth and twenty-seventh Fogg wrote the Miller & Teasdale Co., requesting a report on the carload of cranberries. These

letters were received but no answer was mailed until July eighth, when Fogg received the following letter:

"July 8, 1905.

"Mr. Albert Fogg,

    "Philadelphia, Penn.

"Dear Sir: We appreciate the fact that you are very anxious to have report on the car of cranberries. We are not able to make you report on the car at present. You appreciate the difficulties that we have been having in disposing of cranberries at the late date you shipped them. We were forced to reconsign out to other points a great many of these goods with the hope of realizing on them, and, we have been using every effort for some time to get reports so that we could give you an accounting. but we have not been able to do so. You must pardon the delay, not that it is neglect or inattention on our part, we assure you, we only regret the conditions are such that we could not act more promptly. You have been in such a position yourself frequently no doubt. You realize fully, we believe the fact, that when you made this shipment it was almost impossible to dispose of berries. We are not alone in these difficulties. We find that others have had even more trouble then ourselves. Owing to the failure on the part of other parties to report to us we are unable to report to you.

"With this explanation and assuring you that we will send you account as promptly as possible, we are,

"Very truly yours,

"MILLER-TEASDALE COMMISSION CO.

"P. S. You must pardon our seeming neglect, but have been hoping to give you definite report before this, but could not do so.    M. & T. COM. CO."

At later dates Fogg wrote the Miller & Teasdale Co., several letters asking for a report on the sale of the berries.

The evidence tends to show that the remittances from Crossland & Co., to the Miller & Teasdale Co., were

deposited in bank to the credit of the latter company by J. W. Milby, secretary and treasurer of the company, and that defendant had nothing to do with making these deposits. Milby testified that he was bookkeeper for the Miller & Teasdale Co., and made all bank deposits for it; That defendant was president and general manager of the company and signed most of the checks drawn against its bank account, and he (Milby) only signed checks when defendant was out of the city; that on March 31, 1905, there was a balance in bank to the credit of the company of $366.60, and on April 29th a balance of $2,536.94. Milby identified checks drawn by the Miller & Teasdale Co., between March 4th and 17th, aggregating over ten thousand dollars, which he said represented payments made by the company.

Defendant testified that the corporation was incorporated August 7, 1902, with three stockholders and directors, G. P. Miller, J. W. Milby and himself; that a present of two shares of the capital stock of the company was made to Milby (one by Miller and one by himself) to enable Milby to hold an office in the corporation, and he (Milby) was elected secretary and treasurer and continued to hold both offices as long as the corporation did business; that Miller resigned as president of the company in 6 or 7 weeks after its incorporation and left St. Louis to reside in the East, and did not thereafter participate in the business of the corporation, which was that of handling merchandise on commission. The books of the company were not kept after September, 1903. Defendant testified that it was Milby's business to keep the books and he supposed he had done so, and did not learn to the contrary until the corporation was put in bankruptcy; that he took Milby's word for everything in regard to the books and the state of the company's accounts. The books were kept in a safe in the office, to which defendant had free access. On cross-examination of defendant, over objection of his counsel, it is shown that on September 2, 1902, ten thousand dollars

of the corporation's money was withdrawn from the bank on checks on the company, indorsed by defendant. Defendant stated that these checks were given to Miller for the purpose of canceling obligations to Miller, which had grown out of prior partnership transactions in a commission business, which were to be met and were outstanding at the time of the formation of the corporation. The last minutes of the meeting of the directors was dated September, 1902, when Miller was relieved of his duties as president of the corporation. Defendant stated, on cross-examination, that he did not know the corporation was insolvent March, 1905, and did not know definitely the condition of the corporation until August, 1905; that he never saw any of the checks transmitted by Crossland & Co., to the Miller & Teasdale Co., until after the corporation was put in bankruptcy; that the cranberries belonging to Fogg brought five hundred and seventy-five dollars, to the best of his recollection, and no remittances were made on account of the sale of any of these berries, for the reason they had not all been sold. Defendant acknowledged that he was cognizant of the letters received from Fogg, inquiring about the berries.

The Miller & Teasdale Co., had a stenographer and several employees, all of whom, it seems from the evidence, were in the habit of writing or dictating letters to the company's customers. The defendant was the executive head of the corporation, which, according to the evidence, was a corporation in name only. Defendant and Milby were its sole managers and had entire control of its business, and it is clearly shown from the evidence, that defendant knew that Crossland & Co., had remitted for two hundred and fifty cases of cranberries consigned to them for sale, and that this amount less commission was due Fogg, and that he had repeatedly asked for a statement yet no statement was ever given nor a dollar of the money paid. The facts show a conversion of the money, and a conversion for which Teasdale, as the chief executive officer of the company, is both civilly and

criminally liable, and we think the learned trial judge had ample evidence before him to support his finding of guilty.

A carbon copy of the letter received by Fogg on July 8, 1905, which was objected to by defendant, on the ground the original was the best evidence, was offered in evidence. Fogg testified he received the original letter and that it was in his office at his home (Philadelphia). The court overruled the objection and admitted the carbon copy, to which ruling defendant saved an exception at the time, and called the court's attention to the error in his motion for a new trial. No effort was made to produce the original letter at the trial and as it was shown to be in the office of the prosecuting witness (Fogg), on this showing the copy was not admissible in evidence. [State v. Lentz, 184 Mo. 223; Traber v. Hicks, 131 Mo. 181.] This letter is a very important part of the evidence as it conceals from Fogg the fact that two hundred and fifty crates of the cranberries had been sold and the proceeds paid over to the Miller & Teasdale Co., before the letter was written, and tends to prove a preconceived design on the part of Teasdale or of Teasdale and Milby to convert the proceeds. For this error the judgment must be reversed. We think also, too great latitude was allowed the State in the cross-examination of defendant. It was improper to draw from him, on on cross-examination, the fact that he had indorsed checks of the corporation, amounting to ten thousand dollars, on September 2, 1902, for the benefit of Miller, as this matter was not gone into in the direct examination. His cross-examination as the statute requires, should have been confined to such matters as were brought out in his examination in chief.

The judgment is reversed and the cause remanded. All concur.