* * *
Q: Did [Burke] tell you what [Appellant] was wearing that day?
SCHOENFELD: He said that on that day [Appellant] was wearing a hat-a ball cap, blue jeans and a white shirt.
* * *
Q: Did [Burke] say that [Appellant] made any statements about some items being missing from the trailer when they got out there?
SCHOENFELD: He said that [Appellant] had complained about stuff being missing from the trailer ... that's what [Appellant] said he was missing, Coleman fuel.
Unlike Duncan , Burke was asked about his own statements, and the testimony offered by the State presented materially different statements from Burke's total lack of recall. The trial court did not abuse its discretion in determining that the officers' testimony and recording of Burke's statements were admissible as prior inconsistent statements.
Appellant also makes two unpreserved claims: first, that the trial court erred in allowing the officers to give "paraphrased narratives" of Burke's statements, in particular calling attention to Schoenfeld's "embellished commentary about what methamphetamine makers do and prefer;" and second, that admission of Burke's prior statements despite Burke's assertion that he could not remember those statements deprived Appellant of his constitutional right to "meaningfully confront" witnesses against him.[4]
*346 Appellant did not base objections at trial on the paraphrased/embellished testimony, nor on confrontation grounds, therefore these claims are not preserved for appeal and are subject only to plain error review. State v. Johnson , 207 S.W.3d 24, 34 (Mo. banc 2006). "We exercise our discretion to review for plain error only where the appellant asserting error establishes facially substantial grounds for believing that the trial court's error was evident, obvious, and clear, and that manifest injustice or a miscarriage of justice has resulted." State v. Boston , 530 S.W.3d 588, 590 (Mo. App. E.D. 2017). Plain error can serve as the basis for granting a new trial on direct appeal only if the error was outcome-determinative, Id. , that is, whether the jury would have reached the same conclusion but for the erroneously admitted evidence, State v. Bynum , 299 S.W.3d 52, 60 (Mo. App. E.D. 2009).
Appellant failed to provide authority showing evident, obvious, and clear error in the admission of the paraphrased or embellished hearsay statements. Appellant cited only generally Tolen and Duncan for his contention that allowing a paraphrased narrative embellished with the testifying officer's "spin" was erroneous, although neither case involved an observer testifying to another witness's prior statements. Even assuming, arguendo that the trial court erred in allowing "embellished commentary" from the officers, this commentary was not outcome-determinative, as the evidence of guilt, including Burke's incriminating statements themselves, was very strong absent the comments in question.
For the confrontation issue, we find that United States v. Owens , 484 U.S. 554, 558-559, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988) disposes of Appellant's allegation of error. In that case, the Court held that a "witness' inability to 'recall either the underlying events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances under which the statement was given, does not have Sixth Amendment consequence.' " Id. (quoting California v. Green, 399 U.S. 149, 188, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (Harlan, J., concurring)).
Point III is denied.
"Negative light" evidence (Point IV)
For his fourth point, Appellant presents a litany of claims of erroneously admitted evidence "having no other purpose than to portray [Appellant] is a negative light." First, we address those issues preserved for appeal, and next, those issues subject only to plain error review.[5]
We review preserved claims regarding rulings on the admission of evidence for abuse of discretion, as described above in Point III.
Appellant's first preserved claim pertains to Clark's testimony about seeing Appellant's photograph in the squad room at the sheriff's department. At trial, Appellant cross-examined Clark regarding his identification of Appellant as the person he saw running away from the trailer on May 18. On redirect, the State questioned Clark about his familiarity with Appellant:
Q [THE STATE]: So you believe when you saw him before Chris Burke ever *347 said it, you believed that was [Appellant] that fled from the house?
A [CLARK]: Yes, ma'am, I did.
Q: Had you met [Appellant] before?
A: No, ma'am.
Q: How then-why did you believe that was [Appellant]?
A: Prior investigations in the area.
Q: Had you seen photographs?
A: I had.
Q: Where did you see photographs?
At this point, Appellant objected to testimony that Appellant's photograph hung in the police squad room as more prejudicial than probative. The State argued that Appellant put Clark's identification at issue, so Clark's testimony on redirect was probative of his ability to identify Appellant. The court overruled Appellant's objection, and the following testimony was heard:
Q: You had seen a photograph of [Appellant].
A: Yes, ma'am, I had.
Q: Where did you see the photograph of [Appellant]?
A: In the squad room at the [ ] sheriff's department.
Q: And as a general rule, why do they put photographs of people on the squad room wall in the sheriff's department?
A: Persons of interest. Persons that we're looking at investigating. Persons under investigations currently. Several. There could [sic] any reason.
Q: But when they put those pictures up there, are you, the officers, supposed to study them and be on the lookout for that person?
A: Yes, ma'am.
Q: And did you do so in this case?
A: Yes, ma'am, I had.
Q: So you were looking for [Appellant] before you saw him run from the back of the house?
A: Yes, ma'am.
As a general rule, evidence of a defendant's prior uncharged misconduct is inadmissible for the sole purpose of demonstrating the defendant's criminal propensity. State v. Jensen, 524 S.W.3d 33, 41 (Mo. banc 2017). However, the admission of evidence only violates this general rule if the evidence shows that the defendant has committed, been accused of, been convicted of or definitely associated with another crime or crimes. State v. Harris , 156 S.W.3d 817, 824 (Mo. App. W.D. 2005). "Vague references are not clear evidence associating a defendant with other crimes." Id. Here, Clark's response was generic and did not definitely associate Appellant with some other crime. Clark did not mention a certain crime or type of crime, nor did he speak of an arrest, indictment, or conviction. Evidence that indicates nothing more specific than that a defendant is known to police is not clear evidence that the defendant was involved in another crime. State v. Turner , 367 S.W.3d 183, 188-89 (Mo. App. S.D. 2012). While Clark's statement was slightly more specific than mere knowledge of Appellant, it nonetheless was sufficiently generic to avoid definitely associating Appellant with another crime.
Appellant also argues that he did not "open the door" to the issue of Clark's familiarity with Appellant, because Appellant only questioned Clark's identification regarding Clark's positioning and distance from the figure who ran from the back of the trailer. Of course, "otherwise inadmissible evidence can nevertheless become admissible because a party has opened the door to it with a theory presented in an opening statement or through cross-examination." State v. Shockley , 410 S.W.3d 179, 194 (Mo. banc 2013). But here, as discussed above, Clark's testimony about knowing Appellant from a photograph *348 hanging in the squad room was not inadmissible because it was relevant to his ability to recognize Appellant. The State's introduction of Clark's admissible testimony was not dependent on Appellant "opening the door." Therefore, we find no abuse of discretion in the trial court's admission of testimony about the squad room photograph.
Appellant's next preserved claim in Point IV deals with the evidence of items found at the trailer on May 16, which Appellant claims is inadmissible evidence of uncharged bad acts. At trial, the State argued that the May 16 evidence was being offered not as propensity evidence, but to prove intent and to "tell the jury the whole story" regarding Burke's statement's that Appellant had complained that items, including Coleman fuel, were missing from the trailer. Indeed, one recognized exception to the general rule regarding propensity evidence provides for the admissibility of evidence offered to establish motive or intent for the crime with which the defendant is charged. State v. Watson , 391 S.W.3d 18, 21 (Mo. App. E.D. 2012). Another exception states that when evidence of prior uncharged bad acts "is part of the surrounding circumstances or sequence of events relating to the charged crime, [the evidence] is admissible to present a complete and coherent picture of the events that transpired." Id. To be admissible under either of these exceptions, the evidence, like all evidence, must be logically and legally relevant, where logical relevance means that the evidence tends to establish the defendant's guilt of the crime charged, and legal relevance means that the evidence's probative value outweighs its prejudicial effect. Id. Appellant does not seem to contest the logical relevance of the May 16 evidence, rather he questions the legal relevance, arguing that "the evidence from May 16 was more probative of the [State's] improper effort to show a pattern of criminal activity at the [Burke] property, than probative of intent." It is within the sound discretion of the trial court to determine whether any prejudice outweighs the probative value of evidence of uncharged bad acts. Id. Here, the fact that items were seized from the trailer on May 16 certainly is part of the sequence of events relating to the crime of attempt to manufacture methamphetamine. That the items had been removed from the trailer by a sheriff's deputy is probative of Appellant's intent to manufacture methamphetamine in that Appellant told Burke that some of the items needed to manufacture the methamphetamine, including Coleman fuel, were missing and video evidence was offered to show Appellant buying Coleman fuel on May 18. The trial court noted that it would allow the evidence of items seized on May 16 as evidence of preparation but not as evidence of any other crime. The trial court's decision neither shocks our sense of justice nor evinces a lack of careful consideration. We find no abuse of discretion in the trial court's decision to admit the evidence of items seized on May 16.
Appellant's last preserved claim of error in Point IV pertains to the trial court's admission of a lab report analyzing the substances found in the trailer on May 18. The report identified Appellant as a "suspect." Appellant claims that the lab report's identification of Appellant as a suspect "reinforced" the "harm" caused by Clark's testimony about the squad room photograph. Appellant offers no evidence or authority for his claim. Evidence identifying a defendant as a "suspect" in the crime for which he currently stands trial by definition cannot constitute evidence of a prior uncharged bad act. Moreover, Appellant's argument at trial: "I [defense counsel] believe [the lab report] suggests my client is guilty before the stuff even *349 went to the lab because he's a suspect" is unsupported by case law and is logically unsound. The lab report does not invade the province of the jury by directly commenting on Appellant's innocence or guilt, it only shows that Appellant was a suspect at some point during the police investigation. See State v. Link, 25 S.W.3d 136, 145 (Mo. banc 2000) (Testimony that there were other suspects who had eventually been eliminated by police was not direct commentary on defendant's guilt, and not improper). That a defendant was a suspect in the crime for which he is charged is a foregone conclusion. We do not disturb the trial court's admission of the report listing Appellant as a suspect.
Next, we address Appellant's unpreserved claims, which allege error in the trial court's admission of testimony referencing prior police investigations at the Burke property, the use of police scanners by "criminals" in the area, and evidence of syringes found at the crime scene. As explained in Point III, claims that were not preserved in the trial court can only be reviewed for plain error. We exercise our discretion to review for plain error when the trial court's error is evident, obvious and clear. Boston , 530 S.W.3d at 590. Appellant challenges, as improper propensity or uncharged bad act evidence the following two pieces of testimony:
DEFENSE COUNSEL: You were aware of the situation on May 18, 2012. Right? The incident that we've been talking about.
SCHOENFELD: Yeah, I was aware of the situation on May 18th ... it was part of an ongoing investigation, because we've had stuff out there before.
* * *
STATE: [Was communication with other deputies on May 18] over the radio or was that by cell phone? How was that?
CLARK: We communicated via cell phone at the time.
STATE: Is there a reason you communicated via cell phone?
CLARK: Yes. It's pretty common knowledge that criminals, especially in the area where we worked there, had access to scanners, and they could track or listen to our radio traffic as we were communicating with each other through the radios in the car.
As we discussed supra , in order for evidence to be inadmissible as a prior uncharged bad act, it must definitely associate the defendant with another crime. Harris , 156 S.W.3d at 824. The testimony in question makes only vague references to police investigations and to criminals in the area. Neither statement mentions Appellant. Neither statement was offered to show that Appellant has a propensity to manufacture methamphetamine, rather each goes to why the witnesses acted as they did. Admission of this testimony was not evident, obvious, or clear error so we decline to review these claims for plain error.
Because prejudicial error is a condition precedent of plain error, Deck v. State , 68 S.W.3d 418, 424 (Mo. banc 2002), we dispose of Appellant's request for plain error review of the evidence of used syringes at the crime scene without addressing the propriety of the evidence. "A finding of outcome-determinative prejudice expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all evidence properly admitted, there is a reasonable probability that the jury would have acquitted but for the erroneously admitted evidence." State v. Moyers , 266 S.W.3d 272, 282 (Mo. App. W.D. 2008). Here, we do not find that the jury would have acquitted Appellant but for the evidence of *350 syringes, which is insubstantial when compared with the properly admitted evidence of Burke's statements to police, receipts and video showing Appellant and Burke going store-to-store to buy methamphetamine ingredients, and Clark's description of the man fleeing the trailer. There was no prejudice to Appellant from the evidence of the syringes, and we therefore decline review of this claim for plain error.
Point IV is denied.
Best Evidence (Point V)
For his fourth point, Appellant claims that the trial court erred in admitting and later refusing to instruct the jury to disregard Doerr's and Schoenfeld's testimony about the contents of a surveillance video from the Warrenton WalMart. The state concedes that testimony from Doerr and Schoenfeld about what they saw on the surveillance tape was inadmissible under the best evidence rule. The rule applies when evidence is offered to prove the contents of a writing or recording, including videotapes. State v. Teague , 64 S.W.3d 917, 922 (Mo. App. S.D. 2002). Under the best evidence rule, secondary evidence of the contents of a video, such as the testimony of someone who watched a surveillance tape after the events in question were recorded, are inadmissible unless the primary evidence, i.e. the video, is unavailable or inaccessible. Id. Here, the video was available, but not admissible due to the State's failure to provide authentication. Therefore, the secondary evidence of Doerr's and Schoenfeld's testimony to what they saw on the Warrenton WalMart video was inadmissible, and the trial court erred in overruling Appellant's objections.
However, we review claims of improper admission of evidence for both error and prejudice, Id. , as discussed in Points III and IV. "Erroneously admitted evidence is not considered prejudicial where similar evidence is properly admitted elsewhere in the case or has otherwise come into evidence without objection." State v. Collis , 139 S.W.3d 638, 641 (Mo. App. S.D. 2004). Here, Burke's properly admitted hearsay statements, as discussed in Point III, described the same sequence of events that Doerr and Schoenfeld described from the Warrenton WalMart surveillance video. Therefore, the improper secondary evidence of the contents of the video was merely cumulative of other evidence and therefore, not prejudicial. Point V is denied.
Disposal of Hazardous Evidence (Point VI)
For his sixth point, Appellant claims that the trial court erred in overruling his objections to the admission of evidence of hazardous materials seized from the trailer and disposed of in violation of Section 490.733.2, which states:
Notwithstanding the provisions of section 575.100 and with the approval of the affected court , any law enforcement officer who seizes hazardous materials as evidence related to a criminal investigation may collect representative samples of such hazardous materials, and destroy or dispose of, or direct another person to destroy or dispose of the remaining quantity of such hazardous materials.
(Emphasis added). It is uncontested that the law enforcement officers here did not obtain approval of the court or collect representative samples of the muriatic acid or Coleman fuel seized from the trailer on May 18 before destroying them. Appellant argues that Section 490.733 should be interpreted to render inadmissible any evidence destroyed without approval of the court and without first taking representative samples thereof. Statutory interpretation is a question of law that we review de novo.
*351 State v. Whipple , 501 S.W.3d 507, 513 (Mo. App. E.D. 2016). In State v. Michael , 234 S.W.3d 542, 547-49 (Mo. App. E.D. 2007), we held that "nothing in the [Section 490.733] mandates the exclusion of any evidence of the existence of hazardous materials not collected in the manner permitted under Section 490.733." We are compelled to follow Michael under the doctrine of stare decisis. State v. Chase , 490 S.W.3d 771, 774 (Mo. App. W.D. 2016) ("Under the stare decisis doctrine, a court follows earlier judicial decisions when the same point arises again in litigation"). Therefore, admission of evidence pertaining to the muriatic acid and Coleman fuel was not erroneous, and Point VI is denied.
Cumulative Error (Point VII)
For his seventh and final point, Appellant claims that the trial court erred in denying his motion for acquittal or new trial because the totality of errors in his trial resulted in manifest miscarriage of justice and deprived him of a fair trial. Appellant asks this court to "consider the total impact of the separately presented errors" and find that a manifest injustice or a miscarriage of justice resulted, such that reversal is warranted on that cumulative error.
The Missouri Supreme Court has expressly rejected the theory of "cumulative error" under the circumstances here. State v. Miller , 372 S.W.3d 455, 475 (Mo. banc 2012) ; State v. Gray , 887 S.W.2d 369, 390 (Mo. banc 1994). In Gray , the Supreme Court held that "having determined that none of defendant's previous points amount to reversible error, there can be no reversible error attributable to their cumulative effect." We find no reversible error here in Points I-VI, so we deny Point VII accordingly.
Conclusion
The trial court's judgment is affirmed.
Colleen Dolan, P.J.
Mary K. Hoff, J., concur.

The Sixth Amendment to the United States Constitution reads, in part: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."

Appellant also mentions, in his brief, the State's objected-to statement in closing argument that the police found no pseudoephedrine pills on Burke because Burke gave the pills to Appellant to "grind up" at an associate's home. Appellant does not present argument about this statement in his already multifarious Point IV. Moreover, the statement does not constitute evidence of prior bad acts. We therefore do not address it.