

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112260 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Francois County |
| v. | ) | Cause No. 22SF-CR00517-01 |
| | ) | |
| DEMARCO KING, | ) | Honorable Jerel L. Poor |
| | ) | |
| Appellant. | ) | Filed: November 26, 2024 |

### Introduction

Appellant Demarco King appeals his conviction for stealing. In two points on appeal, King argues that the trial court improperly admitted screenshots of a surveillance video in violation of the Best Evidence Rule and that the trial court erred in admitting a transaction report as a business record without proper authentication. Because the trial court improperly admitted the disputed evidence, which prejudiced Appellant, we reverse and remand for a new trial.

### Factual and Procedural Background

On February 4, 2022, Appellant entered the Farmington Menards. Before leaving the store, he went to the check-out register with a spool of ground wire cable and a bag of chips in his cart. The register clerk ("Clerk") scanned his items, took payment of a $20 bill, and gave Appellant his change. Appellant then exited the store and had no further contact with Menards. Clerk later testified that she remembered the ground wire cable rang up as an extension cord but

she didn't think anything was wrong at the time. She testified at trial "[s]o when I rang it up, it did say like cord, so my thought process is, okay, this is wire, this could be a cord. The Doritos rang up as normal like they normally would, so at the time I didn't know how much wire was." The evidence at trial revealed that the actual price of the ground wire cable was $640.

On March 15, 2022, the front-end manager ("Manager") of the Farmington Menards received an email from Menards' corporate office instructing her to investigate an incident of "bar code swapping" that occurred on February 4th. The Menards corporate officer in Wisconsin sent Manager a point-of-sale transaction report and multiple screenshots of the video feed from the store's surveillance cameras. Menards alleged that the screenshots and video showed Appellant stealing the ground wire cable. Manager testified that she reviewed the entire video. Manager further explained that she, on two separate occasions, requested that the corporate office save the video, which they confirmed that they did. The transaction report showed that Appellant purchased an extension cord and a bag of chips, totaling $18.54. Manager testified that the corporate office provided her with the item information and she was able to determine that her store's inventory count for ground wire cable was off by one spool. Manager called the police and provided them with the screenshots of the surveillance video. Neither the police department nor the prosecutor's office requested or received the surveillance video.

Appellant was charged with one count of the class E felony of stealing. Before trial, Appellant's attorneys filed a motion *in limine* to exclude the screenshots of the surveillance video for violating the Best Evidence Rule and the transaction report because it was not properly authenticated. The trial court denied the motion and admitted the screenshots and the transaction report into evidence.

After the jury convicted Appellant of stealing, the trial court sentenced him to seven years in prison. This appeal follows.

**Standard of Review**

This court reviews the admission of evidence at trial for abuse of discretion. *State v. Davis*, 318 S.W.3d 618, 630 (Mo. banc 2010), *as modified on denial of reh'g* (Aug. 31, 2010). "The trial court has broad discretion to exclude or admit evidence at trial." *State v. Schachtner*, 611 S.W.3d 885, 890 (Mo. App. S.D. 2020) (quoting *State v. Shockley*, 410 S.W.3d 179, 195 (Mo. banc 2013)). "A trial court will be found to have abused its discretion when a ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Elliott v. State*, 215 S.W.3d 88, 92 (Mo. banc 2007). This standard of review includes an inquiry into prejudice, and "the trial court's decision will be reversed only if the error was so prejudicial that it deprived the defendant of a fair trial." *Elliott*, 215 S.W.3d at 93.

**Discussion**

Appellant was charged under Section 570.030,[1] which states, in pertinent part, that "[a] person commits the offense of stealing if he or she… appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." Section 570.030.1(1).

In his first point on appeal, Appellant argues that the trial court abused its discretion by admitting into evidence five screenshots taken from a Menards surveillance video. In his second point on appeal, Appellant similarly argues that the trial court abused its discretion by admitting into evidence a Menards transaction report that was not properly authenticated under the

---

[1] All Section references are to the Missouri Revised Statutes (2022).

business records rule. "The evidence is reviewed in the light most favorable to the verdict." *Davis*, 318 S.W.3d at 629.

## I. Screenshots of the Surveillance Video

When a proponent of evidence seeks to prove the contents of a recording, "[t]he Best Evidence Rule requires production of a recording where the proponent offers its contents into evidence." *K.B.C. v. Juv. Officer*, 273 S.W.3d 76, 78 (Mo. App. W.D. 2008). The Best Evidence Rule "applies when evidence is offered to prove the contents of a writing or recording, including videotapes." *State v. Stufflebean*, 548 S.W.3d 334, 350 (Mo. App. E.D. 2018) (citing *State v. Teague*, 64 S.W.3d 917, 922 (Mo. App. S.D. 2002)). "If the contents of a writing or recording are not directly in issue, even though the evidence contained in the writing may bear upon a fundamental issue in the case, the [B]est [E]vidence [R]ule does not apply and secondary evidence may be used without accounting for the original document." *State v. Hedges*, 193 S.W.3d 784, 788 (Mo. App. E.D. 2006).

The Best Evidence Rule applies here because the contents of the video were directly in dispute as they relate to whether or not Appellant switched the barcodes, per Menards' claim, in that the video is the only evidence of barcode switching offered by the State. While the screenshots taken from the recording were used by Manager during her testimony to establish that Appellant switched the bar codes because Appellant could be seen walking towards the extension cord aisle, notably there are no screenshots of Appellant in the extension cord aisle or of him switching barcodes. Manager's testimony of the screenshots was the only evidence related to the surveillance video; however, since she only viewed the footage after-the-fact, Manager lacked any first-hand knowledge of the events. Although Clerk testified that she remembered checking Appellant out and scanning the items in his cart, she too, lacked first-hand

knowledge of what he did while shopping in the aisles of the store. After finding that the contents of the video are directly in dispute, we analyze the availability of the recording.

The application of the Best Evidence Rule provides that when primary evidence is unavailable, secondary evidence may be admitted in place of the original if the proponent can prove: "(1) the original is unavailable; (2) for some reason which is *not* the proponent's fault, and (3) the secondary evidence is trustworthy." *State v. Strothers*, 798 S.W.2d 723, 724 (Mo. App. S.D. 1990) (quoting *State v. King*, 557 S.W.2d 51, 54 (Mo. App. E.D. 1977)). The trial court must determine whether there is a sufficient foundation for the secondary evidence. *State v. Ellis*, 637 S.W.3d 338, 353 (Mo. App. W.D. 2021). When evidence is first determined to be unavailable, then "secondary evidence is only admissible 'if the offering party demonstrates that the primary evidence is lost or destroyed, is outside the jurisdiction, is in the possession or control of an adversary, or is otherwise unavailable or inaccessible.'" *Teague*, 64 S.W.3d at 922. The court in *K.B.C. v. Juv. Officer*, rejected the argument that a surveillance video in the hands of a third party was unavailable to investigators and the prosecutor's office simply because the video was stored somewhere other than the scene of the crime. 273 S.W.3d at 79 ("the juvenile officer could have presented the video but made no attempt to do so. The recording could have been obtained from the school district and presented to the court. Therefore, it was not unavailable").

a. *The State Failed to Demonstrate that the Video's Unavailability was for Some Reason that was not its Fault.*

Here, the State argued during the motion hearing that the surveillance video was unavailable for use at trial simply because the State did not have the video in its possession at that time. The State did not attempt to argue that the video was lost or destroyed, or that it was denied access to it, and, in fact, there was evidence presented during the hearing that the video

was available, per Menards' policy of saving videos "indefinitely" when requested, as done by Manager. However, the State presented no evidence that it attempted to obtain the video from Menards at any time, or that such attempt was unsuccessful. When asked at the motion hearing if it had "made efforts to try to get [the video]?,"the State responded "We did not, Your Honor."

In *K.B.C. v. Juv. Officer,* the police officers investigating a theft in a high school viewed surveillance video of the incident, but did not obtain the video. The State requested the video from the vice principal at the school, but the vice principal told the State he could not make them a copy because the video was stored on an off-site database managed by the school district. 273 S.W.3d at 78. Though a law enforcement officer testified that he could not view the video after the initial viewing, the court found that this statement was insufficient to prove unavailability because the State did not ask the school district for the video, and therefore it could have been presented at trial but for the officer's failure to request it. *Id*. at 79.

Here, like in *K.B.C.*, the State made no attempts to retrieve the video. The failure to request a video is insufficient to demonstrate that it is unavailable—the State had to show that it put forth an effort to retrieve the video, which it did not. Due diligence was also required in *State v. Strothers*, where the court held that a transcript of an audio tape was inadmissible as the State failed to show it was unavailable because the State did not subpoena the audio tape ahead of trial. 798 S.W.2d at 724. Simply put, the State's failure to act does not prove the video's unavailability, but rather tends to show that the primary evidence was not unavailable "for some reason which is *not* the proponent's fault." *Id.* (emphasis original).

b. *The State Failed to Demonstrate that the Video was Not Available Within the Jurisdiction.*

During the pretrial motion hearing, the State stated that the video was located in Wisconsin, and both parties acknowledged that the video was accessible via the Farmington

6

Menards store computer. At the hearing, the State made statements that the video was located in both Missouri and Wisconsin. At one point the State argued,

> [Manager] had access, and I think in the deposition, she told Stacy that she did see the video but she's not able to download it and put it onto a disk or anything. It's on the server in corporate, which is in Wisconsin, and she can't just pull that video and give it to anybody.

At another point, the State argued that it "*might* be on Menards' server still up in Wisconsin.… We do not have it. It is nothing we have ever had our hands on" (emphasis added). While the State argues now on appeal that Manager couldn't download a recording of the video because she didn't have the "ability" to do so, the State, both at the motion hearing and now on appeal, has not established whether copying the video from the computer in Farmington was physically impossible or simply not permitted because Manager lacked the proper authority to do so under Menards' policies. As it were, the answer to this inquiry remains unknown as the State admitted that, while Manager actually had the capability "to go back and pull, you know, the video from the server and actually look at it," the State never asked Manager to download a recording of the events that occurred on the date in question.

Ultimately, the State's argument that the video either is or "might" be in Wisconsin was insufficient to demonstrate to the trial court that the video was unavailable for use at trial based on its location outside of the jurisdiction because the State failed to demonstrate that it was also unavailable *within* the jurisdiction on the computer in Farmington. *See Teague*, 64 S.W.3d at 922 ("secondary evidence is only admissible 'if the offering party demonstrates that the primary evidence…is outside the jurisdiction'") (quoting *In re Estate of Looney*, 975 S.W.2d 508, 513 (Mo. App. S.D. 1998). Respondent requested the court to allow screenshots as secondary evidence even though they failed to demonstrate that the primary evidence was unavailable; however, this discounts a necessary step for the application of the Best Evidence Rule. The

7

State's lack of due diligence in determining whether or not the video was available was insufficient to establish the unavailability requirement of the Best Evidence Rule. *See Strothers*, 798 S.W.2d at 724.

Here, evidence presented at the hearing showed the video existed on the computer in Farmington, ergo not outside the jurisdiction. Further, the State was unable to affirmatively prove that the video could not be retrieved, which fails to establish its unavailability under this rule. *See e.g., Bolling Co. v. Barrington Co.*, 398 S.W.2d 28, 31–32 (Mo. App. 1965) (finding that leaving documents in New York City was not "a situation where the absence of the originals is appropriately 'accounted for'. They have not been lost or destroyed. The fact that the originals are outside the state has no significance here; the pursuing party has for its own reasons, perhaps of convenience, deliberately chosen not to put them into evidence and seeks to make its case with a type of evidence which plainly is not the best evidence"); *State v. Teasdale*, 97 S.W. 995, 998 (Mo. App. 1906) (finding that a carbon copy was inadmissible where "[n]o effort was made to produce the original letter [in Philadelphia] at trial" in St. Louis); *see also Miller v. John Hancock Mut. Life Ins. Co.*, 155 S.W.2d 324, 326–27 (Mo. App. 1941) (holding that the trial court was correct in refusing to admit testimony as to contents of a record "which consisted of less than a typewritten page" and which it was claimed could not be brought from Boston). Accordingly, the trial court erred in allowing screenshots as secondary evidence because the State failed to show that the primary evidence was unavailable.

c. *The State Failed to Meet the Trustworthiness Requirement of the Best Evidence Rule.*

Respondent also failed to show that the secondary evidence, the screenshots, were sufficiently trustworthy. *See Strothers*, 798 S.W.2d at 724. To use secondary evidence, the proponent has to prove the primary evidence "was unavailable or lost through no fault of

Appellant *and* that the photocopy was trustworthy." *Boroughf v. Bank of Am., N.A.*, 159 S.W.3d 498, 503 (Mo. App. S.D. 2005) (emphasis original). The surveillance video reviewed by Manager was reportedly approximately ten minutes long, and yet, the State presented only five screenshots, amounting to mere seconds. Of the five screenshots presented at trial, only two depict the aisles of the store. Another screenshot shows Appellant entering the store, one shows him exiting the store, and one shows him checking out. Of the two screenshots showing the aisles of the store, one shows the aisle where Manager testified that ground wire cable is located, with a person Manager identified as Appellant in the top half of the photo, though that person's head is not visible in the frame, only a torso and lower body. The other shows a person with a shopping cart in the main aisle of the store, but the image lacks any distinguishing features of the person, including clothing color, due to the poor quality of the footage combined with the fact that the person in the photo is a far distance away from the camera.

Only Manager's second-hand testimony connects the person in these screenshots with Appellant. *See K.B.C. v. Juv. Officer*, 273 S.W.3d at 78 ("Where a witness's testimony is the evidence at issue, the key to whether the rule applies is whether the witness has personal knowledge of the matter that exists independent of the recording. If so, the evidence does not violate the rule"). Any assertions, conclusions, or inferences that Manager drew regarding Appellant's action in the store was improper because the best evidence here—the video—was not properly admitted into evidence and Manager did not have personal knowledge of the events. Manager's narrative testimony cannot be divorced from the Best Evidence analysis here as it is entirely reliant upon evidence which the trial court improperly admitted at the motion hearing. *See Stufflebean*, 548 S.W.3d at 350 ("Under the [B]est [E]vidence [R]ule, secondary evidence of the contents of a video, such as the testimony of someone who watched a surveillance tape after

9

the events in question were recorded, are inadmissible unless the primary evidence, i.e. the video, is unavailable or inaccessible").

Most critically, there are no screenshots from the time-period in which the State seeks to prove Appellant went to the extension cord aisle to switch the bar codes. Instead, the State called that time period for which they had no screenshots "a mysterious two-minute time gap" and then added, "and that's right when we see him going towards the area where the extension cords are." Once again, Manager's testimony is the only evidence that the State relied on to prove that point.

Therefore, because the contents of the video are in dispute and the State failed to prove that the surveillance video footage was unavailable or sufficiently trustworthy, we find that the trial court abused its discretion by admitting the screenshots and testimony concerning the contents of the surveillance video.

### II. Transaction Report

Missouri law provides an exception to the general rule excluding hearsay for the admission of business records that would otherwise be inadmissible hearsay "if the custodian *or other qualified witness* testifies to its identity and the mode of its preparation." Section 490.680 (emphasis added). Missouri law also requires the record to be "made in the regular course of business, at or near the time of the act, condition or event," and come from a source that justifies admission. *Id*.; *State v. Henderson*, 920 S.W.2d 588, 590 (Mo. App. E.D. 1996).

"All of the requirements of Section 490.680 must be satisfied for a record to be admitted as competent evidence." *CACH, LLC v. Askew*, 358 S.W.3d 58, 63 (Mo. banc 2012). The business record exception applies in criminal cases. *See e.g., Henderson*, 920 S.W.2d at 590 (applying the business records exception to admit a police report in a criminal case); *State v. Carruth*, 166 S.W.3d 589, 591 (Mo. App. W.D. 2005) (applying the business records exception

10

to admit fingerprint cards in a criminal case). "A qualified witness need only be someone with knowledge of the procedure governing the creation and maintenance of the type of records sought to be admitted." *State ex rel. Hobbs v. Tuckness*, 949 S.W.2d 651, 654 (Mo. App. W.D. 1997). If a records custodian or qualified witness is not available, the proponent of the evidence may lay a proper foundation for the business record through an affidavit from a person who is qualified to testify "that the records attached to the affidavit were kept as required by section 490.680." Section 490.692. While Section 490.692 provides an alternative route to admission, it does not impose an additional requirement beyond those set out in Section 490.680.

Here, Appellant argues correctly that Manager was not a qualified witness under the statutory requirement, thus requiring the submission of an affidavit in order to properly admit Exhibit 6. Although Manager testified to her training and knowledge of Menards' security system—including her experience receiving security packets from the corporate office, training on the security cameras, and ability to identify the transaction report in this case as similar to others she had received in the past—there is no evidence that she is familiar with the mode of preparation for transaction reports as is required in Section 490.680. The transaction report did not originate in her store, nor did she testify that she was familiar with "the mode of its preparation" or maintenance of the records; rather Manager's testimony demonstrated that her only role is to receive the documents and investigate accordingly. *See State v. Bolton*, 681 S.W.3d 339, 342 (Mo. App. E.D. 2023) (finding that an employee "may have been familiar with the care documented in the records, but he failed to demonstrate any familiarity with the recordkeeping practices that section 490.680 requires"). Thus, Manager was not a qualified witness under Section 490.680.

11

Because there was no qualifying witness laying a foundation for the record and no affidavit verifying its authenticity, the trial court's admission of the transaction report is clearly against the logic of the circumstances. *See State v. Pylypczuk*, 527 S.W.3d 96, 102 (Mo. App. W.D. 2017) (holding that the trial court abused its discretion in admitting an exhibit because "the State failed to lay an adequate foundation for admission of the record").

### III. Prejudice

Finally, we must determine whether the trial court's error in admitting the evidence prejudiced Appellant. *State v. Duncan*, 27 S.W.3d 486, 488 (Mo. App. E.D. 2000) ("An abuse of discretion in admitting challenged evidence is reversible error only if the admission prejudiced the defendant").

> The test is whether the improper admission was outcome-determinative. When the prejudice from the improper admission of evidence is outcome-determinative, reversal is required. A finding of outcome-determinative prejudice expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all evidence properly admitted, there is a reasonable probability that the jury would have acquitted but for the erroneously admitted evidence.

*State v. Black*, 50 S.W.3d 778, 786 (Mo. banc 2001) (citing *State v. Barriner,* 34 S.W.3d 139, 150 (Mo. banc 2000)). Improperly admitted evidence is not harmless error "unless it is harmless without question and it is clear that the jury was not influenced by or disregarded the evidence." *Duncan*, 27 S.W.3d at 488. On the contrary, "[i]mproperly admitted evidence is considered harmless 'where the other evidence of guilt is overwhelming… or where the improper evidence is not highlighted and is largely cumulative of other evidence properly admitted.'" *Teague*, 64 S.W.3d at 922–23 (quoting *State v. Hanway,* 973 S.W.2d 892, 897 (Mo. App. W.D. 1998)).

The remaining evidence absent the screenshots and transaction report is Clerk's testimony based on her first-hand knowledge of her interaction with Appellant and Manager's testimony that the corporate office informed her that a spool of ground wire cable was missing.

12

All other testimony from Manager must be disregarded because she did not have first-hand knowledge of the events, and any knowledge she testified to was acquired second-hand from allegedly viewing the surveillance video that was not entered into evidence, and from the screenshots and transaction report, both of which we find inadmissible. This improper evidence—when balanced against Clerk's testimony that she processed Appellant's transaction for an extension cord, accepted his payment, and gave him his receipt, combined with the bare fact that Manager was told a spool of ground wire cable was missing—made up the majority of the evidence in the State's case-in-chief which was submitted to the jury for its consideration.

There is no properly admitted evidence in the record establishing "appropriate[ion] of property or services of another with the purpose to deprive him or her thereof."[2] Rather, the State used the screenshots and transaction report to imply that Appellant intended to, and did, switch the bar code on the ground wire cable he purchased. The State's case highlighted Manager's improper testimony that Appellant's location within the store—as shown by one screenshot where a person's lower body can be seen at the end of an aisle and one screenshot with an indistinguishable person the State identified as Appellant one aisle over—unquestionably proved that he proceeded to walk to the nearby extension cord aisle and switched the bar codes, even though the screenshots do not show any of this alleged conduct. As such, there is no direct or circumstantial evidence proving intent—Clerk's statement that Appellant was "the first person to

---

[2] The State has the burden to prove every element of the crime and the jury's common sense about the everyday cost of merchandise is not a substitute for the State's failure to provide evidence proving guilt beyond a reasonable doubt. *State v. Ecford*, 239 S.W.3d 125, 127 (Mo. App. E.D. 2007); *See Woolford v. State,* 58 S.W.3d 87, 89 (Mo. App. E.D. 2001) ("'A conviction is prohibited except upon evidence that is sufficient to support a conclusion that every element of the crime has been established beyond a reasonable doubt'") (quoting *Jackson v. Virginia*, 443 U.S. 307, 314-15 (1979)). The fact that a spool of ground wire is large and Appellant paid less than $20 is not proof that Appellant intended to steal the item.

switch the bar codes" on her was purely speculative and does not come close to circumstantially proving the State's case.

Instead, the State asked the jury to infer that Appellant purposely switched the bar codes based on the screenshots and the narration of the events by Manager, both of which were inadmissible. The evidence was not cumulative, because Manager's improper narration is the only evidence that explained how or when Appellant allegedly switched barcodes. Missouri courts have consistently held that "[e]rroneously admitted evidence is not considered prejudicial where similar evidence is properly admitted elsewhere in the case or has otherwise come into evidence without objection." *Stufflebean*, 548 S.W.3d at 350. However, the case before us is no such case as no similar evidence was properly admitted. The improperly admitted evidence highlighted throughout the trial and in the State's closing arguments was the foundation of the State's case-in-chief.

Thus, given the substantial weight of the improperly admitted evidence and Manager's improper testimony during the State's case, we conclude that the improper admission of the evidence "so influenced the jury that…there was a reasonable probability that the jury would have acquitted but for the erroneously admitted evidence," *Black*, 50 S.W.3d at 786, as it was the linchpin of the State's case against Appellant. When the improper evidence is balanced against the properly admitted evidence, there was a reasonable probability that the jury would have acquitted Appellant but for the erroneously admitted evidence, thus prejudicing Appellant.

## Conclusion

For the foregoing reasons, we reverse and remand for a new trial.[3]

_Renée D. Hardin-Tammons_
Renée D. Hardin-Tammons, J.

Philip M. Hess, P.J., concurs.

Gary M. Gaertner, Jr., J., dissents in a separate opinion.

---

[3] Appellant did not raise a sufficiency of the evidence claim, and thus we do not review for such error. Accordingly, because we reviewed only the admissibility of the evidence and not the sufficiency of the evidence, remand for a new trial is appropriate. *State v. Fernandez*, 671 S.W.3d 856, 865 (Mo. App. W.D. 2023), *reh'g and/or transfer denied* (July 25, 2023) (upholding trial court's decision to "[grant] a new trial because of evidentiary *error*, not evidentiary *insufficiency*") (emphasis original); *see also, Pylypczuk*, 527 S.W.3d at 98; *K.B.C. v. Juv. Officer*, 273 S.W.3d at 77. Double Jeopardy prevents retrial only when a sufficiency of the evidence claim is brought and a conviction overturned. *State v. Drabek*, 551 S.W.3d 550, 561 (Mo. App. E.D. 2018).



# In the Missouri Court of Appeals
# Eastern District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED112260 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Francois County |
| v. | ) | Case No. 22SF-CR00517-01 |
| | ) | |
| DEMARCO KING, | ) | Honorable Jerel L. Poor |
| | ) | |
| Appellant. | ) | Filed:  November 26, 2024 |

## Dissent

I respectfully dissent.  While I agree with the majority opinion's well-written analysis on Points I and II that the trial court's admission of the screenshot photographs violated the best evidence rule and the transaction report was improperly admitted, I dissent as to whether Demarco King (King) was prejudiced by the improper admission of this evidence.  Rather, after reviewing the record, I would find that there was overwhelming evidence in the record, even excluding the evidence that was improperly admitted, from which a jury could convict King of felony stealing. Although I dissent, this dissent should not be interpreted as tacit approval of the State's failure to obtain and submit into evidence the full surveillance video.  I agree with the majority opinion that the State had the obligation to obtain the surveillance video or to prove that it was in fact unavailable.

1

An appeals court will only reverse a conviction following the trial court's improper admission of evidence when the admission of that evidence has resulted in prejudice to the defendant. State v. Cole, 483 S.W.3d 470, 474 (Mo. App. E.D. 2016). On appeal, the burden is on the defendant to show "a reasonable probability that in the absence of such evidence the verdict would have been different." State v. Duncan, 27 S.W.3d 486, 488 (Mo. App. E.D. 2000) (citation omitted). Improperly admitted evidence is harmless when the overall evidence of guilt is overwhelming, or the evidence is either not highlighted or is cumulative to other properly admitted evidence. Id.

Here, the improperly admitted screenshot photographs and transaction report were cumulative to other, overwhelming evidence admitted at trial without objection. The Menards front-end manager (the Manager) testified at trial she had reviewed the video footage that corresponded to the screenshot photographs, and she provided the following narration of the contents of the video. The Manager testified the surveillance video showed King placing a spool of ground wire in his cart in the electrical aisle; walking to the extension-cord aisle where he took a barcode from an extension cord and placed it on the spool of ground wire; checking out with the cashier who scanned the barcode for the extension cord instead of the barcode for the spool of ground wire; and then exiting the store with the spool of wire in his cart.[1]

After the Manager testified to the contents of the video, King stated that he renewed his "earlier" objection. King did not articulate the basis for his objection at trial, but in his motion *in*

---

[1] The Manager's full testimony was as follows.
Q. And were you able to review the corresponding footage for [the screenshot photographs]?
A. Yes, sir.
Q. And what were -- were you able to determine that anything happened?
A. Yes. Yes, I was. It appeared that he went over to get the wire. He picked up the wire, went over to a different aisle where the extension cords are, put the barcode, and it appeared to me that it was in front of, like in between like the wire and the plastic wrap around it, where when he went up to the cashier that they scanned that. And then he ended up paying for an extension cord instead of the $650 wire, spool of wire.

2

*limine* he had objected to "a witness narrative description" of the surveillance video on grounds of hearsay. At the pre-trial hearing on the motion *in limine*, King argued that the Manager should not be allowed to narrate events that went beyond what was in the screenshot photographs, noting that the Manager was not present at Menards at the time of the theft, but King did not articulate a specific basis for his objection.

King's objection at trial to the admission of the Manager's testimony, which did not articulate a specific basis for the objection, was not proper. Objections must set forth a specific basis for the objection and must be sufficiently definite, so as to provide the trial court the opportunity to correctly rule on it. State v. Wright, 551 S.W.3d 608, 621 (Mo. App. E.D. 2018). The only basis King articulated in the record for his objection to the Manager's testimony was hearsay, and thus he waived any other challenges to this evidence, including on the basis of the best evidence rule. See State v. Edwards, 116 S.W.3d 511, 543 (Mo. banc 2003) (if defendant does not make certain objection to admission of evidence, then that objection is waived). To the extent King intends on appeal for his best-evidence-rule challenge to the screenshot photographs to encompass an objection to the corresponding full surveillance video on the same grounds, this argument is unavailing. He did not object to the Manager's testimony describing the surveillance video under the best evidence rule below, and thus any objection on this basis is waived. See id.; see also Klotz v. St. Anthony's Med. Ctr., 311 S.W.3d 752, 762 (Mo. banc 2010) (objection on different basis below does not preserve issue for review on appeal).[2]

---

[2] Certainly, had King objected to the Manager's testimony describing the surveillance video on the grounds that it violated the best evidence rule, then I would agree with the majority opinion that her testimony should have been excluded on that basis. See State v. Stufflebean, 548 S.W.3d 334, 350 (Mo. App. E.D. 2018) (under best evidence rule, testimony of someone who watched video describing contents of video is inadmissible unless video itself is unavailable or inaccessible). However, as discussed above, King did not object to the admission of the Manager's testimony under the best evidence rule, and thus any argument on this basis is not preserved for review on appeal. Any discretionary review of unpreserved claims on appeal is for plain error only. See State v. Wilson, 692 S.W.3d 54, 65 (Mo. App. E.D. 2024); see also Rule 30.20. Further, not only did King not challenge the admission of the Manager's testimony at trial under the best evidence rule, he does not assert or brief error on appeal from its admission

3

Although the majority opinion disregarded the Manager's testimony, the general rule is that when otherwise inadmissible evidence is admitted without proper objection, the jury may consider it in determining whether the State has made a submissible case. See Edwards, 116 S.W.3d at 543 (when party failed to object on proper grounds, jury could consider inadmissible evidence because party waived objection). Because King's objection was not proper, the jury was free to rely on the Manager's testimony describing what she saw on the surveillance video in determining King's guilt. See Riley v. Dir. of Revenue, 378 S.W.3d 432, 443 n.13 (Mo. App. W.D. 2012) (once evidence is admitted at trial without proper objection, fact-finder cannot be reversed for relying on it).

In addition to the Manager's testimony describing the surveillance video, the register clerk (the Clerk) testified that she remembered checking King out. She testified that King had two items in his cart, a bag of Doritos and a large spool of wire, which rang up as an extension cord, and that he paid in cash with a $20 bill and received change back. King did not object to the admission of State's Exhibit 7, which showed that the item King left the store with was a thousand-foot 12-2 ground wire cable that was priced at $640, weighing 87 pounds, and with the approximate dimensions of 13.5" height by 13.5" width by 11.5" depth. The Manager confirmed that the ground wire depicted in Exhibit 7 was sold in the store for $640, and that when she checked, the store was missing a spool of ground wire.

On this record, King cannot meet his burden on appeal to show a reasonable probability that, without the improperly admitted evidence, the verdict would have been different. See Duncan, 27 S.W.3d at 488. The evidence of King's guilt—specifically, that the Manager watched

---

on this, or any other, basis. By not claiming error on appeal, King has abandoned any potential challenge to the trial court's admission of the Manager's testimony on any grounds, and thus this issue is not reviewable on appeal. See State v. Neal, 918 S.W.2d 300, 301 (Mo. App. E.D. 1996) (appellant abandons challenge to trial court error on appeal by failing to brief issue). This Court can only consider claims that have been fully briefed by both parties.

4

a surveillance video depicting King place in his cart a 13.5" by 13.5" spool of wire that weighed 87 pounds and was priced in the store at $640, take his cart to the extension-cord aisle where he took a barcode from an extension cord and placed it on the spool of wire, check out with the Clerk who rang up the spool of wire with the barcode for a extension cord that cost under $20, pay in cash, and then exit the store with the spool of wire in his cart—was overwhelming.[3]  When other, properly admitted evidence of guilt is overwhelming, the admission of improper evidence could not have had a decisive effect on the jury's determination of guilt and thus does not result in prejudice to the defendant.  See State v. Davis, 318 S.W.3d 618, 642 (Mo. banc 2010).

For this reason, I would affirm the jury's guilty verdict.

_____
Gary M. Gaertner, Jr., J.

---

[3] Even without the Manager's testimony that she watched a video of King intentionally placing the extension cord barcode on the $640 spool of wire and then paying only for the cheaper item, the jury could infer that King must have known he was not in fact buying an extension cord, despite it ringing up as one.  See State v. Winkle, 696 S.W.3d 897, 905 (Mo. App. S.D. 2023) (reasonable inferences drawn from circumstantial evidence may be sufficient to support conviction).  King placed the item, which was priced at $640, in his cart, yet checked out with an item costing under $20.  Moreover, common sense suggests that no cord weighing 87 pounds and with the approximate dimensions of 13.5" height by 13.5" width by 11.5" depth would cost less than $20.  The jury can draw reasonable inferences from the evidence based on common sense and life experiences.  State v. Johnson, 461 S.W.3d 842, 845 (Mo. App. E.D. 2015).